UNITED STATES of America

v.

**43.47 ACRES OF LAND MORE OR LESS, SITUATED IN the COUNTY OF LITCHFIELD, TOWN OF KENT, et al.**

**Civ. No. H–85–1078 (PCD).**

United States District Court,
D. Connecticut.

Feb. 24, 1994.

Eric N. Wellman, Jones, Damia, Kaufman, Wellman, Borofsky & Stelljes, Danbury, CT, for Preston Mountain.

Carl J. Schuman, U.S. Attorney's Office, Hartford, CT, for I.R.S.

Frank A. Manfredi, Cotter, Greenfield & Manfredi, P.C., Norwich, CT, for Schaghticoke Tribe.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

This action, brought in 1985, seeks condemnation of the land in question for the Appalachian National Scenic Trail. The title owner allegedly is the Preston Mountain Club. An Indian Tribe, the Schaghticoke Tribe, allegedly may claim an interest in the land by virtue of an ejectment (Civil Action No. H–75–125) and a lis pendens recorded in the land records. Counsel have appeared and answered on behalf of the Tribe. It asserts, affirmatively, with specific reference to a companion condemnation of 267.17 acres (Civil Action No. H–84–889), that that land was taken from the Tribe in contravention of the Indian Nonintercourse Act, 25 U.S.C. § 177. The Tribe claims that its interest cannot be extinguished by condemnation.

The government moves for summary judgment claiming that the termination of the ejectment action and release of the lis pendens extinguishes any interest of record in the land, and that the Tribe cannot invoke the Nonintercourse Act absent recognition by the Bureau of Indian Affairs (BIA). The Tribe blithely ignores the court record which is bereft of an articulation of a claim or interest in the land, even as a matter of defense. Stretching the matter, without condoning the inattention to the detail, the Tribe will be taken to have intended the affirmative defenses to apply to the land in question. It also claims that its interest predates the existence of the United States and is not dependent on the land records. Further it asserts that BIA recognition is not required as tribal status may be adjudicated by the court.

The government's motion cannot be sustained on the ground that absent the action in ejectment and the lis pendens, no tribal interest exists. Historically Indians banded together in tribes and inhabited, hunted, fished and cultivated certain lands. Certainty of boundaries was unnecessary. With the new nation, Indians were supplanted. Some tribes ceased to exist. Others lived on as tribal membership was passed to succeeding generations. The existence of a tribe and its interest in particular lands was often recognized by the United States in treaties and laws. By certain activity as a tribe in or related to certain lands, a tribe was regarded as having an interest therein, an interest which could not be extinguished except in compliance with the Nonintercourse Act. Thus a tribe's interest in land does not spring from federal or state statutes, or the land records. It follows that

such an interest cannot be extinguished by withdrawing the ejectment action or by erasing the lis pendens from the land records.

More seriously the government questions the Tribe's standing. Indisputably the Tribe has not applied for nor been granted BIA certification. The Tribe argues that any dispute as to its status as a tribe, concededly necessary to invoke the Nonintercourse Act, can be adjudicated by the court.

 A tribe has been construed to mean "a body of Indians of the same or similar race, united in a community under one leadership or government, and inhabiting a particular though sometime ill-defined territory." *Montoya v. United States,* 180 U.S. 261, 266, 21 S.Ct. 358, 359–60, 45 L.Ed. 521 (1901). Thus a tribe had a discernible membership and territorial association. But a tribe is not a static group. Its existence is preserved by new generations succeeding to membership. Though the membership changes, the tribe is potentially forever. Rights in the tribal lands are vested in the tribe such that members of a tribe have no right to assert such rights in their own name. *Epps v. Andrus,* 611 F.2d 915, 918 (1st Cir. 1979); *James v. Watt,* 716 F.2d 71, 72 (1st Cir.1983). An action to assert an interest in tribal land must be brought by the tribe or by one who represents the tribe. *Oneida Indian Nation v. County of Oneida,* 434 F.Supp. 527, 537–38 (N.D.N.Y.1977), *aff'd,* 719 F.2d 525 (2d Cir.1983), *aff'd in part rev'd in part,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985). The interest is described as a common law right and an "aboriginal title." *Id.* at 233–34, 105 S.Ct. at 1250–51.

 Tribal status has two aspects. One is existence of a body as above defined prior to formation of the United States. The second is the existence of a group which, by succession, has preserved the characteristics of the tribe. In *Golden Hill Paugussett Tribe of Indians v. Weicker,* 839 F.Supp. 130 (D.Conn.1993), this court held that the second aspect was properly a matter for the BIA and that absent certification by it, plaintiff could not maintain an action to protect and preserve tribal land rights. The same question is presented by the government's

motion here and must be resolved in the same manner. As the Tribe concedes, "a claim under the Nonintercourse Act.... [must] be brought by an Indian Tribe." Memorandum of November 5, 1993 at 12. Its arguments rely on several cases which are not controlling. No group, as individuals, in association or under the name of a tribe can cloak themselves with the protection of the Nonintercourse Act by mere allegation. Status as a tribe or as a representative thereof is required. The Tribe's status is not here conceded and thus it must be established. On the record here, there is no basis to find that those acting under the name of the Schaghticoke Tribe could be found to constitute or represent that Tribe. The BIA, as authorized and directed by Congress, has established criteria and a procedure for determining that fact. As held in *Golden Hill Paugussett v. Weicker,* that matter must be resolved by the BIA before the group here acting as the Tribe can lawfully do so.

*Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.,* 418 F.Supp. 798 (D.R.I.1976) did not discuss the role of the BIA. In *Mashpee Tribe v. Mashpee,* 447 F.Supp. 940 (D.Mass.1978), *aff'd,* 592 F.2d 575 (1st Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979), a jury decided the issue of tribal status, albeit somewhat confusedly. On appeal that procedure was upheld in a manner which invited reassessment as BIA evolved, *see Golden Hill Paugussett,* 839 F.Supp. 130; *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 581 (1st Cir.1979), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). In *Catawba Indian Tribe v. South Carolina,* 718 F.2d 1291 (4th Cir.1983), the first requirement of a claimant under the Nonintercourse Act, that it be, or be the representative of, an Indian tribe, was assumed up to 1959. *Id.* at 1295. The history from that date presented the question whether the Tribe lost its status and not the question presented here. In *Joint Council of Passamaquoddy Tribe v. Morton,* 528 F.2d 370 (1st Cir.1975) it was stipulated that the Passamaquoddy Tribe was "a tribe racially and culturally." Id. at 376–77. This led to the

holding that facts qualifying plaintiff as a tribe sufficed to permit an action under the Act without formal recognition of tribal status. That is not the case at bar.

It is true that there is no obligation to seek certification by BIA. There is nothing in the cases cited that suggests that just any group can allege that they are or represent a tribe and are therefore, without question, entitled to invoke the Act. Those here claiming to be entitled to cloak themselves with the mantle of the Schaghticoke Tribe are put to the test of establishing that entitlement. The question is not whether that Tribe is an Indian tribe for the purposes of the Act. The question is whether those who have here invoked its name are, or are qualified to represent, the Schaghticoke Tribe. It is that question, as in *Golden Hill Paugussett*, that must be answered by the BIA. There is no logical distinction between asserting rights under the Act in defense or when affirmatively claiming rights in land.

CONCLUSION:

For the forgoing reasons, plaintiff's motion for summary judgment (doc. # 49) is granted. However, it is to be understood that the rights, if any, of the Schaghticoke Tribe in the land in question are not hereby determined.

SO ORDERED.